New, York Ontario and Western Railway Company, Respondent, *v.* Morton C. Griffin, Appellant.

**Transportation Corporations Law — consents of local authorities — sufficiency of notice of hearing — when failure to obtain consent of village authorities to operation of bus line therein does not necessarily warrant continuance of injunction restraining operation.**

1. The words " defined by the Railroad Law " contained in section 26 of the Transportation Corporations Law which provides that no certificate of public convenience and necessity for operation of a bus line shall be granted until the owner thereof shall have procured, " after public notice and a hearing, the consent of the local authorities of said city, as defined by the Railroad Law, to such operation," apply to the immediately preceding words " local authorities " and not to the words " public notice and a hearing." Consent given by a municipality for operation of a bus line within its limits was, therefore, in compliance with the statute where the common council, which was the local authority therein as defined by the Railroad Law, gave public notice of and held a hearing on the application, notwithstanding that the notice given did not comply with that required by the Railroad Law. The manner and extent of the notice was discretionary with the common council so long as it acted in good faith and an objection to the operation of the bus line on the ground that the notice was not in compliance with the statute cannot be sustained where sufficiency of the advertisement to give actual notice has not been questioned.

2. The fact that before the public service commission granted its certificate of public convenience and necessity another village to which the bus line was to run had by resolution of its trustees brought itself within the provisions of section 26 of the Transportation Corporations Law requiring consent of local authorities and that no such consent had been obtained, does not necessarily lead to an affirmance of a judgment restraining the operation of the bus line in that village where the basis of the injunction was the irreparable loss to plaintiff, a competing railroad. If the trial court had determined that the defendant could legally operate his bus line through the streets of one municipality and over the state highway to the limits of the village in question it might, in its discretion, have refused an injunction under all the circumstances because the harm suffered by the railroad company would be more imaginary than real. This especially where the people

of the village have made no objection to the bus line or to the fact that consent of the village authorities had not been procured.

*N. Y., O. & W. Ry. Co.* v. *Griffin,* 201 App. Div. 733, reversed.

(Argued January 23, 1923; decided March 6, 1923.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 11, 1922, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

*Abram F. Servin* for appellant.   Plaintiff is not entitled to maintain this action for the reason that it cannot, under the facts shown, sustain legal damage from the operation of defendant's bus line.   (*Fisher* v. *Clark,* 41 Barb. 329; *Johnson* v. *Hitchcock,* 15 Johns. 185; *People ex rel. N. Y. C. R. R. Co.* v. *P. S. Comm.,* 195 N. Y. 157; *Matter of R., C. & E. Traction Co.,* 118 App. Div. 521.)   The order and certificate in the proceeding before the public service commission is a bar to this action.   (*Rome Bank* v. *Village of Rome,* 10 N. Y. 20; *Vilas* v. *Jones,* 1 N. Y. 274; *Stilwell* v. *Carpenter,* 59 N. Y. 414; *Matter of K., Q. & S. R. R. Co.,* 6 App. Div. 241.)   Any rights the local authorities of the village of Liberty may have had were fully protected by the certificate of the commission; they are of no concern to plaintiff and it may not assert the failure of the local authorities to act in a matter in which the village is solely interested.   (*People* v. *State Tax Commission,* 174 N. Y. 417; *People* v. *West N. Y. Traction Co.,* 214 N. Y. 526; *Curtis* v. *Leavitt,* 15 N. Y. 9; *Smith* v. *New York,* 68 N. Y. 522; *Parker* v. *Elmira R. R. Co.,* 165 N. Y. 274; *Rochester Turnpike Co.* v. *Joel,* 41 App. Div. 43; *Rochester Water Works* v. *Rochester,* 84 App. Div. 71; 176 N. Y. 36; *Darling* v. *Service Transp. Co.,* 118 Misc. Rep. 811.)   The court erred in holding the consent of the common council of the city of Middletown invalid.   (*Wood* v. *Baldwin,* 10 N. Y. Supp. 195; *Wheatfield* v. *Tonawanda St. R. Co.,* 92 Hun, 460; *Wilcox* v. *McClellan,* 185 N. Y. 9; *Kuhn* v. *Knight,* 190 N. Y. 339;

*Ghee* v. *Northern Union Gas Co.,* 158 N. Y. 510; *People* v. *Con. Tel. & Elec. Subway Co.,* 187 N. Y. 58; *People* v. *Cole,* 190 N. Y. 268; *Bohmer* v. *Haffen,* 161 N. Y. 390; *Pettit* v. *McClellan,* 185 N. Y. 9.)

*Elbert N. Oakes* for respondent. The operation of defendant's bus line through the streets of the city of Middletown is unauthorized and unlawful. (*People ex rel. McNeile* v. *Glynn,* 128 App. Div. 257; *Brooklyn City R. Co.* v. *Whalen,* 191 App. Div. 737, 743; *Public Service Commission* v. *Booth,* 170 App. Div. 590; *Freeman* v. *Freeman,* 126 App. Div. 601; *Wehrenberg* v. *N. Y., etc., R. Co.,* 124 App. Div. 205, 209; *Baxter* v. *N. Y. Realty Co.,* 128 App. Div. 79, 80; *Town of Fort Edward* v. *Hudson V. Ry. Co.,* 127 App. Div. 438; *Porto Rico Ry. Co.* v. *Mor,* 253 U. S. 345; *U. S.* v. *Standard Brewery, Inc.,* 251 U. S. 210; *Johnson* v. *So. Pac. Co.,* 196 U. S. 1; *State ex rel. Crow* v. *St. Louis,* 174 Mo. 125; *Seiler* v. *State,* 160 Ind. 605; *Curran* v. *Well Co.,* 205 Ill. App. 307; *State* v. *Brewery Co.,* 170 Pac. Rep. 296.) The operation of defendant's bus line through the streets of the village of Liberty is unauthorized and unlawful. (*N. G. R. R. Co.* v. *Gaiser,* 109 Misc. Rep. 38.)

Crane, J. The plaintiff is a domestic corporation operating a railroad among other places through and between the incorporated village of Liberty and the incorporated city of Middletown located respectively in Sullivan and Orange counties in the state of New York, and by a branch line extending into the village of Monticello. The defendant is the owner of a motor bus line which he operates for the carriage of passengers and baggage between the city of Middletown and the village of Liberty using the public streets of said city and village and the state highway.

This action was brought to restrain the defendant from operating this bus line in the city of Middletown and the village of Liberty on the ground that certain

necessary consents of the local authorities had not been obtained.  The plaintiff claims the right to maintain the action because of the interference of the bus line with its traffic business.  The lower courts found in the plaintiff's favor and the appeal to this court brings up for review the validity of and necessity for these consents.

The facts, briefly, are these: After a public notice and hearing the common council of the city of Middletown granted to the defendant a consent to use certain city streets for the operation of his motor bus route between that city and the village of Liberty.  Their action was thought to be in accordance with section 26 of the Transportation Corporations Law (Cons. Laws, ch. 63).  The notice of the hearing before the council was published once in two city daily newspapers.  Thereafter and on July 26, 1921, the defendant applied to the public service commission of the state of New York in accordance with the provisions of the Transportation Corporations Law for a certificate of public convenience and necessity.  At a public hearing which was had by the commission on October 11, 1921, the New York, Ontario and Western Railway Company appeared and was heard in opposition to the application.  On the 23d of November, 1921, the commission granted the certificate.  After the hearing but before the determination of the commission, the board of trustees of the village of Liberty had passed a resolution that section 26 of the Transportation Corporations Law should apply to that village.  This required the consent of the trustees of the village to the use of its streets.  The order of the commission granting the application, therefore, made the following provision regarding the village of Liberty: " This certificate shall be without prejudice to the rights of the village of Liberty, or the local authorities thereof, to apply for a reopening of this proceeding and a modification of this certificate in so far as the route of the applicant traverses said village."

The contention of the railroad has been that the notice of the hearing given by the common council of the city of Middletown was insufficient and not in compliance with the provisions of section 26 of the Transportation Corporations Law and that the village trustees of Liberty had never given their consent. We will first consider the objection made to the action of the city authorities of Middletown.

Section 26, referred to, so far as applicable to this case, reads as follows: " No bus line  *  *  *  carrying passengers  *  *  *  within the limits of a city  *  *  * shall be operated wholly or partly upon or along any street *  *  *  nor receive a certificate of public convenience and necessity until the owner or owners thereof shall have procured, after public notice and a hearing, the consent of the local authorities of said city, as defined by the Railroad Law (Cons. Laws, ch. 49), to such operation, upon such terms and conditions as said local authorities may prescribe." The Railroad Law by sections 171 and 172 has reference to the consent of local authorities and contains the following provisions: "A street surface railroad  *  *  *  shall not be  *  *  *  operated unless *  *  *  the consent of the local authorities having control of that portion of a street or highway upon which it is proposed to build or operate such railroad, extension or branch shall have been first obtained." The same section defines the local authorities to be the following: " In cities the common council, acting subject to the power now possessed by the mayor to veto ordinances; in villages the board of trustees; and in towns the superintendent of highways and the town board shall be the local authorities referred to, except that in villages where the control of the streets is vested in any other board or authorities, such other board or authorities shall be the local authorities referred to." The consent of the local authorities is to be procured in the manner stated in section 172 which reads: " The application for the con-

sent of the local authorities shall be in writing and
before acting thereon such authorities shall give public
notice thereof and of the time and place when it will
first be considered, which notice shall be published daily
in any city for at least fourteen days in two of its
daily newspapers."

The common council of the city of Middletown, as
before stated, published the notice of the hearing of the
defendant's application once in two city daily newspapers.
The above provision of the Railroad Law requires notice
to be published daily for at least fourteen days in two
of its daily newspapers. The plaintiff, therefore, contends
that the consent given by the city of Middletown was
illegal and void as the notice was not in compliance with
this latter provision. The answer of the defendant to
this contention is that section 26 of the Transportation
Corporations Law does not require notice to be given
as required by section 172 of the Railroad Law but does
require the consent of the local authorities as defined by
the Railroad Law. We agree with the defendant's appli-
cation of these laws.

As the matter is purely statutory and no consents to
the operation of a bus line are necessary unless required
by law, it is reasonable to take the language of the
legislature as we find it. The Transportation Corpora-
tions Law under section 26 says that no certificate of
public convenience and necessity shall be granted until
the owner of the bus line shall have procured, " after
public notice and a hearing, the consent of the local
authorities of said city, as defined by the Railroad Law,
to such operation." The words " defined by the Railroad
Law " by all rules of grammatical construction apply to
the immediately preceding words " local authorities " and
not to the words " public notice and a hearing." If we
should adopt the plaintiff's construction we would have
this provision reading " nor receive a certificate of public
convenience and necessity until the owner shall have

procured after public notice and a hearing as *defined* by the Railroad Law," etc. " Define " would not be the customary or proper word to use in such connection. If the legislature had intended that the notice mentioned in section 172 of the Railroad Law was to be given they would have used the words " public notice and a hearing as *required* by the Railroad Law " or " as *provided* by the Railroad Law." The words " public notice and a hearing " could have been left out altogether if a publication for fourteen days in two daily newspapers was intended. All that would have been necessary would have been to say that the certificate of public convenience and necessity could not be received until the owner had procured the consent of the local authorities of a city as provided by the Railroad Law. The word " define " as used in section 26 of the Transportation Corporations Law must define or describe or fix the meaning of something. This something to be fixed, determined or defined was the local authority whose consent was required and we find in the Railroad Law a definition of " local authorities." In cities, it is the common council; in villages, the board of trustees; in towns, the superintendent of highways and the town board. Who are the proper local authorities has frequently been a matter of dispute requiring determination by the courts. (*Wilcox* v. *McClellan*, 185 N. Y. 9; *Kuhn* v. *Knight*, 190 N. Y. 339; *Ghee* v. *Northern Union Gas Co.*, 158 N. Y. 510; *People ex rel. Flatbush Gas Co.* v. *Coler*, 190 N. Y. 268.)

We are, therefore, of the opinion that the consent given by the city of Middletown was in compliance with the Transportation Corporations Law. The common council of the city was the local authority defined by the Railroad Law. It gave a public notice of a hearing on the defendant's application and held such a hearing. The manner and extent of the notice was discretionary with it so long as it acted in good faith. The sufficiency of the advertisement to give actual notice has not been ques-

tioned. The city of Middletown is not objecting to the defendant's bus line or to the consent granted.

This objection of the railroad to the operation of the defendant's bus line through the city of Middletown cannot be sustained.

As to the village of Liberty, we have this provision of law applicable to the situation. Section 26 (amd. L. 1919, ch. 307) of the Transportation Corporations Law reads: "The town board of any town or the board of trustees of any village may adopt a resolution providing that the provisions of this section shall apply to such town or village, and thereafter no bus line   *   *   *   shall be operated   *   *   *   in such town or village   *   *   *   until the owner or owners shall have procured the consent of the local authorities of such town or village, in the same manner and subject to the same terms and conditions as is provided in this section for procuring the consent of the local authorities of the city." Before the public service commission granted its certificate of public convenience and necessity the village of Liberty by resolution of its trustees had come within these provisions of section 26 and it was necessary for the defendant owner to procure the consent of the village trustees before the certificate of public convenience and necessity could be issued permitting the operation of buses on the streets of the village.

But this does not necessarily lead to an affirmance of the judgment appealed from in so far as it restrains the defendant from operating his motor bus line in that village. Issuing an injunction is often a matter of discretion depending upon the circumstances and the injury which may be inflicted. The loss sustained by the plaintiff through the operation of the bus line in the city of Middletown might be considerable while its operation in the village of Liberty might be negligible. If the trial court had determined that the defendant could legally operate his bus line through the streets of Middletown

and over the state highway to the village of Liberty it might in its discretion have refused an injunction under all the circumstances because the harm and injury suffered by the railroad company would be more imaginary than real. The basis of the injunction in this case, it must be remembered, is the irreparable loss to the plaintiff and not merely the violation of some provision of law. Here again we find that the people of Liberty have made no objection to the defendant's bus line or to the fact that he has not procured the consent of the village authorities. The public service commission gave its certificate, as above quoted, without prejudice to the village of Liberty to apply for a reopening of the proceedings and a modification of the certificate in so far as the bus route traverses the village streets. The village authorities have not availed themselves of this privilege.

We, therefore, reverse this judgment and grant a new trial leaving it to the trial court to determine upon a rehearing in the light of our decision whether an injunction should be granted as to the operation in the village of Liberty. The judgment should be reversed and a new trial ordered, with costs to abide the event.

Hiscock, Ch. J., Hogan, Cardozo and Pound, JJ., concur; McLaughlin, J., dissents; Andrews, J., absent.

Judgment accordingly.